1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   M.B.,                                    No. 1:26-cv-00005-DJC-AC

12                  Petitioner,

13   v.                                        ORDER

14   KRISTI NOEM, et al.,

15                  Respondents.

16

17          Petitioner is a noncitizen who was paroled into the United States in August of

18   2024.  (Mot. (ECF No. 3) at 10.)  Over a year later, Petitioner appeared at an

19   Immigration and Customs Enforcement ("ICE") office for a check-in and was detained,

20   purportedly pursuant to 8 U.S.C. § 1225(b).  (Mot. at 11; Opp'n (ECF No. 9) at 6.)  On

21   January 2, 2025, Petitioner filed a Petition for a Writ of Habeas Corpus along with a

22   Motion for Temporary Restraining Order, arguing his present detention is unlawful

23   and seeking release or a bond hearing.  (ECF Nos. 2, 3.)  For the reasons stated below,

24   Petitioner's Motion is granted.

25                                    **BACKGROUND**

26          Petitioner is a noncitizen from Türkiye who entered the United States in August

27   of 2024.  (Mot. at 10.)  That day, Petitioner was detained, and an asylum officer

28   conducted a credible fear interview.  (*Id.*)  The officer determined Petitioner had a

1

1  credible fear of persecution in Türkiye and released him from custody on parole

2  pursuant to 8 U.S.C. § 1182(d)(5)(A), which allows for the parole of noncitizens for

3  "urgent humanitarian reasons." (*Id.*; 8 U.S.C. § 1182(d)(5)(A).)

4  In November of 2024, Petitioner applied for asylum and withholding of

5  removal. (Mot. at 10.) Petitioner seeks asylum due to persecution he faced in Türkiye

6  for both his political activities and his Kurdish ethnicity, which included arrest and

7  torture by local authorities. (*Id.*)

8  On December 5, 2025, Petitioner appeared for a check-in appointment at an

9  ICE office, and ICE arrested him. (*Id.* at 11.) Petitioner is now detained at the

10  California City Immigration Detention Facility. (Pet. (ECF No. 2) ¶ 9.)

11  Petitioner filed a Petition for a Writ of Habeas Corpus and a Motion for

12  Temporary Restraining Order. (ECF Nos. 2, 3.) Briefing on the Motion for Temporary

13  Restraining Order is now complete. (Mot. (ECF No. 3); Opp'n (ECF No. 9).) The Court

14  ordered this matter submitted without oral argument. (*See* ECF No. 6.)

15  **LEGAL STANDARD**

16  The standards for issuing a temporary restraining order and a preliminary

17  injunction are "substantially identical." *See Stuhlbarg Int'l Sales Co. v. John D. Brush &*

18  *Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief,

19  Plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable

20  harm in the absence of preliminary relief; (3) that the balance of equities tips in their

21  favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def.*

22  *Council, Inc.,* 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are 'serious

23  questions going to the merits' – a lesser showing than likelihood of success on the

24  merits – then a preliminary injunction may still issue if the 'balance of hardships tips

25  *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All. for*

26  *the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citations omitted). The

27  Ninth Circuit employs a sliding scale approach to the *Winter* factors, under which a

28  strong showing on the balance of hardships may compensate for a lesser showing of

2

likelihood of success. *See Where Do We Go Berkeley v. California Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022).

**DISCUSSION**

**I.  Likelihood of Success on the Merits**

    **A.  Applicable Statutory Framework**

        The government argues Petitioner is subject to expedited removal under 8 U.S.C. § 1225(b)(1)(A) and, therefore, subject to mandatory detention.  (Opp'n at 6.) Though not explicitly stated, the government appears to justify Petitioner's detention on these grounds because the government asserts it revoked Petitioner's parole the day he was detained.  (*Id.* at 2.)  Therefore, according to Respondents, after losing his parole status, he qualifies as present in the United States without having been admitted or paroled.

        As a threshold matter, is it unclear if Respondents are correct that they validly revoked Petitioner's parole.  Under Section 1182(d)(5)(A), "upon accomplishment of the purpose for which parole was authorized or when in the opinion of [designated officials] neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States, parole shall be terminated upon written notice to the [noncitizen] and he or she shall be restored to the status that he or she had at the time of parole."  8 C.F.R. § 212.5(e)(2)(i).  Moreover, due process entitled Petitioner to notice and an opportunity to be heard in the revocation of his Section 1182 parole.  *Noori v. LaRose*, No. 3:25-cv-01824-GPC-MSB, 2025 WL 2800149, at *11 (S.D. Cal. Oct. 1, 2025) (holding "Petitioner was entitled to due process in his parole revocation [including] notification of revocation and the reasoning for revocation, if not also an opportunity to be heard and contest the determination"); *Araujo v. LaRose*, No. 3:25-cv-02942-BTM-MMP, 2025 WL 3278016, at *2 (S.D. Cal. Nov. 24, 2025) (explaining "[d]ue process for parole terminations requires (1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for the termination; and (3) an

1  opportunity to rebut the reasons given for the termination").  As Petitioner correctly

2  identifies, Respondents do not assert, nor have they supplied any evidence that they

3  provided Petitioner with any written notice or opportunity to be heard.  (Mot. at 18;

4  Opp'n at 8.)  Therefore, on this record, it appears Respondents did not validly revoke

5  Petitioner's parole such that he would be subject to detention under Section 1225.

6  **B. Due Process**

7      However, even if Section 1225 applies to Petitioner, the argument that

8  "§ 1225(b) divests petitioner of any liberty interest for purposes of the Due Process

9  Clause is unpersuasive."  *Fernandez Lopez v. Wofford*, No. 1:25-cv-01226-KES-SKO,

10  2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025).  By re-detaining Petitioner without

11  providing a bond hearing, the government has violated his due process rights.

12      The Fifth Amendment Due Process Clause prohibits government deprivation of

13  an individual's life, liberty, or property without due process of law.  *Hernandez v.*

14  *Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  While noncitizens located outside the

15  United States are not granted the full protection of the Constitution, the Due Process

16  Clause applies to all "persons" within the borders of the United States, regardless of

17  immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process

18  Clause applies to all 'persons' within the United States, including [noncitizens],

19  whether their presence here is lawful, unlawful, temporary, or permanent.").

20  "Freedom from imprisonment–from government custody, detention, or other forms of

21  physical restraint–lies at the heart of the liberty that Clause protects."  *Id.* at 690.  To

22  determine if Petitioner's due process rights have been violated, the Court must answer

23  two questions: "the first asks whether there exists a protected liberty interest under

24  the Due Process Clause, and the second examines the procedures necessary to

25  ensure any deprivation of that protected liberty interest accords with the

26  Constitution."  *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at

27  *2 (E.D. Cal. July 14, 2025).

28

**1.  Petitioner has a Protected Liberty Interest.**

A protected liberty interest can arise from a conditional release from physical restraint.  *Young v. Harper*, 520 U.S. 143, 147–49 (1997).  Even when the government initially has the discretion to detain or release someone from custody, once the government decides to release them, that individual gains a constitutionally protected liberty interest in remaining out of custody.  *Morrissey v. Brewer,* 408 U.S. 471, 482 (1972).  As Petitioner correctly identifies, his "release was a promise that his liberty would not be revoked unless he failed to live up to the conditions of [his] release." (Mot. at 22.)  Therefore, by releasing Petitioner on parole pursuant to 8 U.S.C. § 1182(d)(5)(A), the government endowed Petitioner with a protected liberty interest. *Fernandez*, 2025 WL 2959319, at *5 (holding noncitizen paroled pursuant to 8 U.S.C. § 1182(d)(5)(A) had a protected liberty interest in remaining out of custody); *see also Garcia v. Andrews*, No. 1:25-cv-01006-JLT-SAB, 2025 WL 2420068, at *10 (E.D. Cal. Aug. 21, 2025) (holding noncitizen released on parole held a protected liberty interest in maintaining out-of-custody status); *J.E.H.G. v. Chesnut*, No. 1:25-cv-01673-JLT-SKO, 2025 WL 3523108, at *9 (E.D. Cal. Dec. 9, 2025) (same).

The government's argument to the contrary misunderstands both Petitioner's argument and the Due Process Clause.  The government argues the fact that the "Executive Branch exercised discretion in one way in the past, does not transform that discretionary act into an entitlement."  (Opp'n at 6.)  However, once the government exercises its discretion in ways that create constitutional rights, the fact that the government retains statutory discretion does nothing to supplant those previously created rights.  *See Morrissey,* 408 U.S. at 482 (finding individuals paroled had constitutional liberty rights even though they possessed no statutory right to remain on parole); *see also Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (explaining that even "where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause").

5

The government's argument that Petitioner's case is factually distinguishable from this Court's decision in *Lopez v. Lyons*, No. 2:25-cv-03174-DJC-CKD, 2025 WL 3124116 (E.D. Cal. Nov. 7, 2025) (*see* Opp'n at 7) such that Petitioner lacks a liberty interest is also unpersuasive.  According to Respondents, because Petitioner was released on parole under Section 1182 rather than on his own recognizance under 8 U.S.C. § 1226, Petitioner lacks a liberty interest.  (*Id.*)  However, under both statutes, noncitizens who are not considered threats to public safety and national security are released pending a decision on their removability.  *J.S.H.M v. Wofford*, No. 1:25-cv-01309-JLT-SKO, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16, 2025).  Once released under either statute, individuals acquire constitutionally protected liberty interests. *See Fernandez*, 2025 WL 2959319, at *5 (holding noncitizen paroled pursuant to 8 U.S.C. § 1182(d)(5)(A) had a protected liberty interest); *Lyons*, 2025 WL 3124116, at *3–4 (holding individual released on own recognizance under Section 1226 had a protected liberty interest).

**2.  Petitioner is Entitled to a Pre-Deprivation Bond Hearing.**

Having established that Petitioner has a protected liberty interest, the Court must now determine what process is due.  The Court considers three factors: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Petitioner has a substantial private interest in maintaining his out-of-custody status.  Freedom from imprisonment is at the core of the Due Process Clause. *Zadvydas*, 533 U.S. at 690.  Petitioner has remained out of custody for over a year. (Mot. at 22.)  At the time of his detention, Petitioner was employed as a delivery driver and attending school to improve his English, with the aim of resuming his previous

1    occupation as an accountant.  (Pet. ¶ 26.)  Petitioner's release has permitted him to

2    build a life within the bounds of the conditions imposed by his release. Petitioner has

3    a substantial private interest in living out of custody, and his detention denies him that

4    liberty interest.  *See Zadvydas*, 533 U.S. at 690.

5         The risk of erroneous deprivation is also considerable.  Petitioner has not

6    received a bond hearing.  (Mot. at 23.)  Civil immigration detention is "nonpunitive in

7    purpose and effect" and, therefore, only justified when a noncitizen is a flight risk or

8    danger to the community.  *Zadvydas*, 533 U.S. at 690.  Petitioner asserts, and

9    Respondents do not contest, that Petitioner does not present either risk. (Mot. at 23;

10   *see generally* Opp'n.)  Further, it is undisputed that Petitioner appeared for a

11   scheduled check-in appointment with ICE when arrested.  (Mot. at 23.)  Respondents

12   have not argued nor presented any evidence that there has been a change in

13   circumstance between his 2024 entry into the United States and his detention on

14   December 5, 2025.  Thus, the value of additional procedural safeguards here is

15   substantial.

16        Finally, Respondents' interest in detention is low.  *Ortega v. Bonnar*, 415 F.

17   Supp. 3d 963, 970 (N.D. Cal. 2019); *see Hernandez*, 872 F.3d at 994.  The effort and

18   cost required to provide Petitioner with procedural safeguards are minimal.

19                                        * * *

20        Having found that Petitioner has a liberty interest and determined, via the

21   *Mathews* factors, that he is entitled to process, and that process should have been

22   afforded to him prior to detention, the Court finds that Petitioner has established a

23   likelihood of success on the merits of his due process claim.

24   **II.  Irreparable Harm**

25        Petitioner will suffer irreparable harm in the absence of preliminary relief.  The

26   Ninth Circuit has recognized the irreparable harm inflicted by the "subpar medical and

27   psychiatric care in ICE detention facilities."  *Hernandez*, 872 F.3d at 995.  More

28   broadly, the Ninth Circuit has also acknowledged the "irreparable harms imposed on

                                          7

1  anyone subject to immigration detention" including "the economic burdens imposed

2  on detainees and their families as a result of detention." *Id.* Petitioner has thus

3  established irreparable harm.

4  **III. Balance of the Harms & the Public Interest**

5      The final two *Winter* factors merge when the government is the nonmoving

6  party. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). The interests of equity and

7  the public weigh in favor of Petitioner here. As discussed above, Petitioner is harmed

8  by his ongoing detention. A temporary restraining order also inflicts minimal harm to

9  the government. Though Respondents have an interest in enforcing immigration

10  laws, "the public has a strong interest in upholding procedural protections against

11  unlawful detention, and the Ninth Circuit has recognized that the costs to the public of

12  immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL

13  1676854, at *3 (N.D. Cal. June 14, 2025). "[N]either equity nor the public's interest are

14  furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th

15  821, 832 (9th Cir. 2022). There also appears to be no dispute as to Petitioner's risk of

16  flight or danger to the community. For these reasons, the Court concludes that the

17  equities and public interest weigh in favor of Petitioner.

18  **IV. Bond**

19      "The court may issue a preliminary injunction or a temporary restraining order

20  only if the movant gives security in an amount that the court considers proper to pay

21  the costs and damages sustained by any party found to have been wrongfully

22  enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the

23  amount of security required, *if any*," and it "may dispense with the filing of a bond

24  when it concludes there is no realistic likelihood of harm to the defendant from

25  enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir.

26  2003). Because the "the [government] cannot reasonably assert that it is harmed in

27  any legally cognizable sense by being enjoined from constitutional violations,"

28

1  *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983), the Court finds that no security

2  is required here.

3                                    **CONCLUSION**

4       In accordance with the above, IT IS HEREBY ORDERED that:

5           1.  Petitioner's Motion (ECF No. 3) is GRANTED.

6           2.  Petitioner M.B. shall be released immediately from Respondents'

7               custody.  Respondents shall not impose any additional restrictions on

8               him, unless they are determined to be necessary at a future pre-

9               deprivation/custody hearing.

10          3.  Respondents are ENJOINED AND RESTRAINED from re-arresting or re-

11              detaining Petitioner absent compliance with constitutional protections,

12              which include, at a minimum, pre-deprivation notice – describing the

13              change of circumstances necessitating his arrest and detention – and a

14              timely hearing.  At any such hearing, the Government shall bear the

15              burden of establishing, by clear and convincing evidence, that Petitioner

16              poses a danger to the community or a risk of flight, and Petitioner shall

17              be allowed to have his counsel present.[1]

18          4.  Respondents are ORDERED TO SHOW CAUSE on or before January 15,

19              2026, as to why this Court should not issue a preliminary injunction on

20              the same terms as this Order.  On or before January 20, 2026, Petitioner

21              may file a reply, if any, to Respondents' opposition.

22          5.  Pursuant to Local Rule 230(g), the Motion for Preliminary Injunction is

23              submitted on the papers.  If the Court subsequently concludes that oral

24

25  _____

26  [1] This burden of proof has been regularly applied by courts reviewing similar cases, and the Court adopts the views of those courts here. *See, e.g., Pablo Sequen v. Albarran*, --- F.Supp.3d ----, 2025 WL

27  2935630, at *13–14 (N.D. Cal. Oct. 14, 2025); *Martinez Hernandez v. Andrews*, No. 1:25-cv-01035-JLT-HBK, 2025 WL 2495767, at *13–14 (E.D. Cal. Aug. 28, 2025); *Castellon v. Kaiser*, No. 1:25-cv-00968-JLT-

28  EPG. 2025 WL 2373425, at *11–12 (E.D. Cal. Aug. 14, 2025).

argument is necessary, a hearing will be set and the parties notified

accordingly.

    IT IS SO ORDERED.

Dated:  **January 9, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC7 – MBcv00005.tro